UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Benjamin Mahan,

       Plaintiff,

Case No. 07-15223

Honorable Nancy G. Edmunds

v.

James B. Peake, Secretary, Department of Veterans Affairs,

       Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff Benjamin Mahan filed this action, alleging that Defendant Department of Veterans Affairs tolerated a hostile work environment in violation of Title VII and engaged in wage discrimination in violation of the Equal Pay Act.[1]  Defendant argues that Plaintiff has failed to establish a prima facie case for either claim.  This matter comes before the Court on Defendant's motion for summary judgment.  For the reasons set forth below, Defendant's motion is GRANTED.

**I.    Facts**

Plaintiff Benjamin Mahan is a 53 year-old male employed by the Veterans Administration Medical Center (VAMC) in Detroit, Michigan.  (Pl.'s Resp. at 3.)  Plaintiff began as a Rehabilitation Technician at the VAMC in 1984, and his job title changed to Addiction Therapist in 1992.  (*Id.*)  Plaintiff had several supervisors from 1984 to 2003,

---

[1]     Plaintiff's amended complaint also included a retaliation claim, which this Court dismissed on October 29, 2008 upon stipulation of the parties. (Order, Docket Text # 24.)

none of whom ever disciplined him, gave him a substandard performance evaluation, or issued him letters of counseling or admonishments. (*Id.*; Pl.'s Resp., Ex. 21-3 (Mahan Dep. 86-87).)

In 2003, Dr. Lad Vidergar, who is also male, became Plaintiff's supervisor. (Pl.'s Resp. at 4; Def.'s Mot. at 1.) Plaintiff alleges that eight incidents involving Vidergar created a hostile work environment. These are as follows:

1) On May 25, 2004, Plaintiff complained to Vidergar that a female addiction therapist at the VAMC was being paid more than Plaintiff and the other addiction therapists. (Pl.'s Resp. at 5.) Vidergar responded, "What are you going to do for me?" (*Id.*) Plaintiff understood this question to be sexual. (Def's Mot. at 1.) Plaintiff left Vidergar's office without responding, and claims that his relationship with Vidergar "began to deteriorate" after his "perceived rebuff of Vidergar." (Pl.'s Resp. at 5.)

2) During weekly status conferences with Plaintiff from May 2004 to January 2005, Vidergar "had a propensity to pull his pants up around his crotch and buttocks when he sat down," which made Plaintiff uncomfortable. (Pl.'s Resp. at 5, 13.)

3) On May 27, 2004, Vidergar presented Plaintiff with an anonymous complaint that had been placed in staff mailboxes. (Pl.'s Resp. at 8 & Ex. 21-10, Ex. 21-11.) Plaintiff denied the contents of the letter, which concerned Plaintiff's handling of his methadone group. (Pl.'s Resp. at 8.) Vidergar subsequently met with Plaintiff's patients to ask about the letter. (Pl.'s Resp. at 9.) Vidergar also sent an e-mail to addiction therapy staff, explaining: (1) that the complaint had been placed in staff mailboxes; (2) that no one should assist a patient in distributing such letters; (3) that Vidergar's investigation suggested that a patient did not write the complaint; and (4) that if a staff member wrote this letter it would constitute harassment and be subject to disciplinary action. (Pl's Resp. at 9 & Ex. 21-11.)

4) On November 9, 2004, during a meeting to discuss a patient's care, Vidergar invited Plaintiff to his home. (Pl.'s Resp. at 5.) Plaintiff declined the invitation. (*Id.*)

5) On December 3, 2004, Vidergar issued a Letter of Counseling to Plaintiff for being absent without taking sick leave. (Pl.'s Resp. at 6.)

2

At 11:00 a.m. on December 1, Vidergar was informed by staff that they had been unable to locate Plaintiff since 10:15 a.m. and that a patient was waiting to be seen. (Def.'s Resp. at 2.) Vidergar was unable to locate Plaintiff until 12:40 p.m. when Plaintiff informed him that he had been sick in the bathroom. (*Id.*) Plaintiff had been leading a group from 9:30 to 10:30 a.m., which Vidergar could have seen on the schedule. (Def.'s Mot., Ex. 6 (Mahan Dep. 12:3-5).) At 10:35 a.m. Plaintiff went back to his office only after being informed by staff that he had no patients and that one of his patients who arrived while he was in the group session may have been given to another counselor per the usual custom. (*Id.* at 11:1-7).) Plaintiff was sick in the bathroom off and on from 11:00 a.m. to noon but had no patients scheduled until 1:00 p.m. (Id. at 11:7-20).) The Letter of Counseling explained that Plaintiff should inform his supervisor and use sick time when he is unable to perform his duties due to illness and that failure to comply might result in disciplinary action in the future. (Def.'s Mot. at 3 & Ex. 11.) The letter did not impose disciplinary action, although Plaintiff was docked two hours of sick leave. (*Id.*; Def.'s Mot., Ex. 6 (Mahan Dep. 20:18).)

6) On December 8, 2004, Plaintiff received a card slid under his office door on which was written, "You are cordially invited . . . to f\*\*k the sh\*\*t out of me." (Pl.'s Resp. at 9 & Ex. 21-13.) Plaintiff is unaware of who wrote and/or delivered the card, but Vidergar's home address was embossed on the envelope. (Pl.'s Resp. at 14.)

7) On December 14, 2004, Vidergar issued a Proposed Admonishment and docked Plaintiff a half hour of leave for being absent from work for an hour to attend the viewing of a deceased colleague when he had only gotten pre-approval for a half hour of leave. (Mahan Affidavit, Docket Text # 22 at 4; Def.'s Mot., Ex. 21-14.) Vidergar also questioned one of Plaintiff's colleagues at length about the incident and Plaintiff's whereabouts. (Def.'s Mot., Ex. 6 (Mahan Dep. 23-24).) Plaintiff asserted that he had only been absent a half hour, and Vidergar rescinded the Proposed Admonishment on January 11, 2005 while still taking the full hour of leave. (Mahan Affidavit, Docket Text # 22 at 4.) It is unclear whether or not Vidergar eventually gave Plaintiff back the extra half hour of leave. (Def.'s Mot, Ex. 6 (Mahan Dep. 24:6-7); Pl.'s Resp., Ex. 21-3 (Mahan Dep. 64:17-18).)

8) On January 14, 2005, Vidergar issued Plaintiff a Proposed Admonishment for being absent from work for one hour during an education meeting on the morning of December 13. (Def.'s Mot. at 3 & Ex. 12.) Plaintiff explained to Vidergar that he had been in the parking garage clearing off his car because he had had a flat tire on his way to work. (Def.'s Mot. at 3.) Plaintiff had actually been in a required EEO

3

session relating to a complaint he had lodged about Vidergar. (Mahan Affidavit, Docket Text # 22 at 5.) On January 24, Plaintiff's union representative sent Vidergar a letter in which he explained this and in which he told Vidergar that his proposed admonishment "sound[ed] more like" "harass[ment]." (Def.'s Mot. at 3 & Ex. 13.) On January 27, 2005 Vidergar issued an Admonishment anyway. (Def.'s Mot. at 4 & Ex. 14.) Plaintiff testified that "[Vidergar] would look up under curtains and rocks trying to find where I'm at" and that "[n]o one else has ever been written up for not making an education meeting." (Def.'s Mot., Ex. 6 (Mahan Dep. 21:9-13).) An Admonishment remains in an employee's personnel file for six months to two years, depending on the employee's future behavior, at which time it is destroyed. (Def.'s Mot. at 4.)[2]

In December of 2004, Plaintiff complained to the Deputy Director of the VAMC about Vidergar's conduct. (Def.'s Mot., Ex. 6 (Mahan Dep. 13:13-21).) On January 18, 2005, Plaintiff complained to an EEO counselor about the alleged sexual harassment, and he filed a formal EEO complaint on March 3. (Def.'s Mot. at 6 & Exs. 2-3.) On June 13, 2005, Plaintiff filed a second formal complaint, alleging retaliation claims. (Def.'s Mot. at 6 & Exs. 3-4.) On August 15, 2005, the two complaints were accepted for investigation. (Def.'s Mot. at 6-7 & Ex. 4.) The complaints alleged four incidents of sexual harassment and eight incidents of retaliation. (Def.'s Mot. at 7 & Ex. 4.)[3] On August 27, 2007 Plaintiff withdrew his EEO complaints, and his administrative case was subsequently dismissed. (Def.'s Mot. at 8 & Ex. 5.)

Plaintiff also informed Vidergar "several times" of his discomfort with Vidergar's sexual harassment. (Def's Mot., Ex. 6 (Mahan Dep. 7:13-17).) On January 13, 2004, Plaintiff told

---

[2] Vidergar continued to evaluate Plaintiff's job performance favorably during this period. (Pl.'s Resp. at 4 & Ex. 21-12.)

[3] Four of the incidents that were described in the EEO complaint as retaliation are not described above because Plaintiff did not mention them in his response to Defendant's motion for summary judgment. The Court assumes that Plaintiff does not include these because they pertain to his dismissed retaliation claim.

4

Vidergar that he was uncomfortable working around him. (Pl.'s Resp. at 10.) On January 24, 2005, Plaintiff and his union representative met with Vidergar to discuss Plaintiff's desire not to have Vidergar continue supervising him. (Mahan Affidavit, Docket Text # 22, at 5.) At this meeting, they gave Vidergar a letter in which Plaintiff's union representative wrote that Plaintiff "feels uncomfortable" meeting with Vidergar alone given the "ongoing dispute" between Plaintiff and Mahan. (*Id.*; Pl.'s Resp., Ex. 21-17.) Vidergar informed Plaintiff and his union representative that there would no change in Plaintiff's supervision. (Mahan Affidavit, Docket Text # 22, at 5.)

On January 31, 2005, Vidergar's supervisor, Dr. John Grabowksi, informed Plaintiff and his union representative by letter that Vidergar would continue to supervise Plaintiff. (Mahan Affidavit, Docket Text # 22 at 5; Pl.'s Resp., Exs. 21-19, 21-20.) Dr. Grabowksi explained that Plaintiff's complaints — that Vidergar was more concerned about Plaintiff's whereabouts than that of other therapists and "acted effeminate in [Plaintiff's] presence" — did not rise to the level of harassment warranting a change in supervision. (Pl.'s Resp., Ex. 21-19.) After writing this letter, Dr. Grabowksi met with an EEO counselor and learned more specifics about Plaintiff's claims. Dr. Grabowksi testified that since late January 2005, he has been supervising Plaintiff instead of Vidergar. (Pl.'s Resp., Ex. 21-21 (Grabowski Dep. 6-7).) But Vidergar exercised some degree of supervision over Plaintiff in April of 2005, and Plaintiff allleges that Vidergar was still supervising him as of September 2005 while no longer meeting with him weekly. (Pl.'s Resp., Ex. 21-22; Def.'s Mot., Ex. 7 (Mahan Dep. 4:23-25); Pl.'s Resp., Ex. 21-3 (Mahan Dep. 33:23).)[4]

---

[4] As a result of these events, Plaintiff sought professional counseling and talked to pastors but has not missed any work. (Pl.'s Resp., Ex. 21-3 (Mahan Dep. 75-78).)

5

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

Plaintiff alleges that Defendant violated Title VII by failing to remedy the hostile work environment created by Dr. Vidergar's conduct. Plaintiff also alleges that Defendant

violated the Equal Pay Act by paying Ms. Schultz more than Plaintiff for three and a half years. This Court will address each claim in turn.

### A. Sex Discrimination

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986).[5] To be considered "hostile" under Title VII a workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). In order to establish a prima facie case of a hostile work environment based on sex, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on his sex; (4)

---

[5] Alternatively, an employee can establish a Title VII violation by proving that he has experienced *quid pro quo* sexual harassment. Plaintiff has not raised a *quid pro quo* harassment claim and could not make out a prima facie case since he has presented no evidence of a tangible job detriment resulting from his rejection of Vidergar's advances. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000) (prima facie case of *quid pro quo* harassment requires showing that "employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment" such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, [or] a material loss of benefits"); *see also, e.g, id.* (temporary loss of Coordinator position was not tangible job detriment because "de minimis employment actions are not . . . actionable").

the harassment created a hostile work environment; and (5) the employer is vicariously liable. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).[6]

Defendant contends that Plaintiff has not met the third requirement of a prima facie case because the alleged incidents, with the exception of the sexually explicit card, do not constitute "harassment based on sex." (Def.'s Mot. at 11; Def.'s Reply 3-4.) The Sixth Circuit has held that "the conduct underlying a sexual harassment claim need not be overtly sexual in nature" to be "based on sex" in violation of Title VII. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). But "[n]on-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis" only "where it can be shown that but for the employee's sex, he would not have been the object of harassment." *Bowman*, 220 F.3d at 464 ("litany of perceived slights and abuses" subsequent to supervisor's unwelcome sexual advances "[could] not be considered in hostile environment analysis because [plaintiff] ha[d] not shown that [it] was based upon his status as a male"); *see also Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790-91 & n.7 (6th Cir. 2000) (same); *Williams*, 187 F.3d at 565 (non-sexual harassment directed at female employee could be considered as part of hostile work environment claim because accompanied by comments evidencing "'anti-female animus'" (internal citation omitted)).

In order to establish a prima facie case with respect to Vidergar's non-sexual conduct, Plaintiff must show that it was "directed at [men] and motivated by discriminatory animus

---

[6] Once an employee has established that his supervisor created an actionable hostile work environment involving no tangible employment action, an employer is vicariously liable unless it can show: (1) "that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998).

8

against [men]." *Williams*, 187 F.3d at 565; *see also*, *Bowman*, 220 F.3d at 464 ("[I]t is important to distinguish between harassment and discriminatory harassment in order 'to ensure that Title VII does not become a general civility code.'" (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). With respect to four of the eight alleged incidents — (1) Vidergar's handling of the anonymous complaint, (2) the December 4 letter of counseling, (3) the December 14 proposed admonishment; and (4) the January 27 admonishment — Plaintiff has failed to "create an inference, sufficient to survive summary judgment, that [his] gender was the motivating impulse for [Vidergar's] behavior." *Williams*, 187 F.3d at 566. Like the plaintiff in *Bowman* and unlike the plaintiff in *Williams*, Plaintiff "has not alleged that [Vidergar] made a single comment evincing an anti-male bias." *Bowman*, 220 F.3d at 464. Further, several female VAMC employees were treated similarly by Vidergar. Pl.'s Resp., Ex. 21-3 (Mahan Dep. 56-57, 68-69.)); *see EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 508 (6th Cir. 2001) (explaining that "'Title VII does not cover the 'equal opportunity' . . . harasser'" "'because such a person is not *discriminating* on the basis of sex'" (internal citation omitted)); *see also id.* at 505 (male supervisor's inappropriate touching of male plaintiff was harassment based on sex because he "treated [males] differently from females"). The Court finds only the following incidents to be sufficiently sex-based to be probative of Plaintiff's hostile work environment claim: (1) Vidergar's statement, "What are you going to do for me?"; (2) Vidergar's manner of hiking up his pants in Plaintiff's presence; (3) Vidergar's invitation of Plaintiff to his home; and (4) the sexually explicit card.[7]

---

[7] Since the Court does not find these incidents probative of Plaintiff's claim, it need not address Defendant's argument that Plaintiff failed to exhaust administrative remedies with respect to them.

Defendant also contends that Plaintiff has failed to create a genuine issue of material fact with respect to the fourth requirement of a prima facie case because the alleged incidents are not sufficiently severe or pervasive to create a hostile work environment. (Def.'s Mot. at 11-13.) "In determining whether the alleged harassment is sufficiently severe or pervasive . . . the court must consider the totality of the circumstances." *Williams*, 187 F.3d at 562 ("[A] work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for purposes of a hostile work environment claim, even though no single episode crosses the Title VII threshold." *id.* at 564). "Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Bowman*, 220 F.3d at 463. "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere's with an employee's work performance.'" *Clark*, 400 F.3d at 351 (quoting *Harris*, 510 U.S. at 23). "[T]he test for a hostile work environment has both objective and subjective components." *Williams*, 187 F.3d at 566. In order to be actionable, an environment must be one "that a reasonable person would find hostile or abusive," and the employee must "subjectively perceive the environment to be abusive." *Harris*, 510 U.S. at 21-22.

The four alleged incidents — (1) Vidergar's one-time statement, "What are you going to do for me?"; (2) Vidergar's manner of hiking up his pants when sitting down in Plaintiff's presence; (3) Vidergar's one-time invitation of Plaintiff to his home; and (4) the sexually explicit card — are "serious" but insufficiently pervasive or severe. *Bowman*, 220 F.3d at 464. With the exception of Vidergar's manner of sitting down at weekly meetings, his

actions lack the continuous nature of conduct the Sixth Circuit has deemed sufficient to constitute a hostile work environment. *See, e.g.*, *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008) ("continuous preoccupation with sex talk and persistent unwelcome advances" sufficient to establish genuine fact issue on fourth element of prima facie case); *Deters v. Rock-Tenn Co.*, 245 F. App'x 516, 524 (6th Cir. 2007) (supervisor's "constant preoccupation with, and unwelcome communications about, his own sexual prowess" sufficient to present triable issue of fact on fourth element of prima facie case); *Williams*, 187 F.3d at 559, 564 (fifteen alleged incidents including vulgar comments, derogatory remarks about women, and unwelcome sexual advances sufficiently severe or pervasive); *Clark*, 400 F.3d at 351-52 (three incidents of offensive touching and remarks experienced by plaintiff insufficient to survive summary judgment while seventeen incidents of harassment experienced by second plaintiff were sufficient because "present[ed] more of an ongoing pattern of unwanted conduct and attention"); *Abeita v. TransAm. Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998) ("ongoing," and "commonplace" sexual comments over seven-year period sufficiently severe or pervasive).

Plaintiff's allegations also lack the necessary severity, even assuming that the vulgar and sexually explicit card constituted an unwelcome sexual advance from Plaintiff's supervisor.[8] *See, e.g.*, *Bowman*, 220 F.3d at 459, 464 (supervisor's rubbing of employee's shoulders, grabbing of employee's buttocks while stating that "she controlled [employee's] ass and she would do whatever she wanted with it," suggestion that she and employee could use her whirlpool together, suggestion that employee should come to her home

---

[8] The Court will assume for the purposes of this motion that the card originated from Vidergar even though Plaintiff has presented little evidence of this.

11

without his girlfriend next time, and placing of her hands on employee's chest insufficiently severe or pervasive to constitute hostile work environment); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (plaintiff survived summary judgment on issue of whether harassment severe or pervasive when supervisor "made regular crass and sexual references to her private body parts, requested oral sex in graphic terms, and solicited sex from her on multiple occasions," "regularly attempted to touch her while they worked on the line," "rubbed against her with his private parts," and "tried to grab her waist"); *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) ("single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment"); *Morris*, 201 F.3d at 790 (several dirty jokes, one verbal sexual advance, one-time reference to plaintiff as "Hot Lips," and comments about plaintiff's state of dress insufficiently severe or pervasive); *Hearbert-Yeagin*, 266 F.3d at 508-09 (co-worker's repeated grabbing of plaintiff's genitals sufficiently severe to create hostile work environment); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-26 (6th Cir. 1997) (jokes about female body parts, comments about plaintiff's weekend activities, and derogatory remarks about women "merely offensive" rather than "severe"). Because Plaintiff has failed to present sufficient evidence such that a reasonable juror could find an actionable hostile work environment, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's Title VII claim.[9]

### B. Equal Pay Act Violation

---

[9] Given the lack of an actionable hostile work environment, this Court need not reach the issue of employer liability.

Plaintiff also alleges that Defendant violated the Equal Pay Act by paying a female addiction therapist a starting salary that exceeded Plaintiff's salary. The Equal Pay Act, 29 U.S.C. § 206(d)(1), "prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work." *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). In order to establish a prima facie case of wage discrimination, a plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Id.* (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). A plaintiff need only show that the jobs held by female and male employees are "substantially equal," not that "'the skills and qualifications of the individual employees holding those jobs'" are equal. *Id.* at 362-63 (internal citation omitted). "'[P]roof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act.'" *Id.* at 360 (internal citation omitted).

Once a plaintiff has made out a prima facie case, an employer can only escape liability under the Act by proving that the wage disparity is due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. 29 U.S.C. § 206(d)(1). The defendant bears the burden of proof with respect to these four affirmative defenses. *Beck-Wilson*, 441 F.3d at 360. "'[T]he burden of proving that a factor other than sex is the basis for a wage differential is a heavy one.'" *Id.* at 365 (citations omitted). "'Unless the factor of sex provides *no* part of the basis for the wage differential, the requirements [for the affirmative defense] are not met'" *Id.* (internal citation omitted). At the summary judgment stage, the defendant "must demonstrate that there is no genuine issue as to whether the difference

in pay is due to a factor other than sex." *Id.*  If the defendant meets this burden such that "'a reasonable jury viewing defendant's evidence could only find for the defendant,'" the plaintiff "bears the burden of producing evidence creating a triable issue of fact that the reasons proffered by [the] [d]efendant[] are pretextual." *Balmer v. HCA , Inc.*, 423 F.3d 606, 613 (6th Cir. 2005) (internal citation omitted).

On August 22, 2002, Dorothy Schultz was hired as an addiction therapist at the VAMC.  (Mahan Affidavit, Docket Entry # 22 at 5.)  Schultz's starting salary was at the GS 7, Step 10 level.  (Def.'s Mot. at 19.)  Defendant acknowledges that, at that time, Plaintiff was being paid at the GS 7, Step 8 level.  (*Id.*)  Plaintiff claims that Shultz's position is identical to his, and Defendant does not contest this assertion, either.  (Pl.'s Resp. at 16.)

Defendant argues, instead, that Plaintiff has not made out a prima facie case of wage discrimination because there were female addiction therapists at the VAMC earning a lower salary than Plaintiff.  (Def.'s Mot. at 19.)  In August of 2005, the other male addiction therapist at the VAMC was being paid at the GS 7, Step 9 level, and the five female addiction therapists employed at the VAMC, other than Ms. Schultz, had pay levels ranging from GS 7, Step 6 to GS 7, Step 10.  (Def.'s Mot. at 19.)[10]  It is true that a plaintiff "may not ignore lower-earning employees of the opposite sex when seeking to show inequality in pay." *Ambrose v. Summit Polymers, Inc.*, 172 F. App'x 103, 106 (6th Cir. 2006).  At the same time, however, the Sixth Circuit has made clear that "complete [gender] diversity between plaintiffs and comparators is not required to state a prima facie case under the EPA."  *See Beck-Wilson*, 441 F.3d at 362 (female nurse practitioners satisfied prima facie

---

[10]   Neither party presented evidence of the salaries of other VAMC addiction therapists in 2002.

14

case that paid less than predominately male physician assistants even though 5% of nurse practitioners were male and 15% of physician assistants were female).  Plaintiff has not presented evidence of each female addiction therapist's salary to enable the Court to determine whether Plaintiff earned less than the average pay of opposite-sex employees. *See Ambrose*, 172 F. App'x at 107 & n. 1 (plaintiff stated prima facie case when earned less than average pay of male employees doing equal work).  This Court need not determine whether Plaintiff's failure to present such evidence destroys his prima facie case because Defendant has met its burden of proving that even if a wage disparity exists, it results from "a factor other than sex."

Defendant offers evidence that Ms. Schultz's starting salary was higher than Plaintiff's salary for a reason having nothing to do with gender.  Defendant explains that Schultz transferred to the VAMC from the VA Medical Center in Palo Alto, California where she had worked as an addiction therapist for many years. (Def.'s Mot. at 19.)  Because Schultz's salary was at a GS 9, Step 5 level when she left Palo Alto, she was eligible for a starting salary of GS 7, Step 10 upon her transfer to VAMC, according to a VA formula for determining the salary of employees who transfer facilities. (*Id.*)  The VA's Chief of Human Resources testified that according to this formula, Schultz was entitled to start at a GS 7, Step 10 because she had performed for one year at this level in Palo Alto prior to her promotion to the GS 9, Step 5 level. (Osinski Decl., Docket Text # 29-2, at 2-3.)  On December 11, 2005, all addiction therapists at the VAMC were reclassified to a GS 9 level with step increases determined by a non-discretionary formula. (*Id.* at 3.)  At that time,

Schultz went from a GS 7, Step 10 to a GS 9, Step 5 and Plaintiff went from a GS 7, Step 8 to a GS 9, Step 3.  (*Id.* at 3-4.)[11]

Defendant has put forth sufficient evidence to prove that there is no genuine issue of material fact regarding whether the wage disparity between Plaintiff and Ms. Schultz was due to a factor other than sex.  *See, e.g.*, *Balmer*, 423 F.3d at 613 (difference in starting salaries based on factor other than sex when higher paid employee had higher salary history and greater experience than plaintiff); *Ambrose*, 172 F. App'x at 107-08 (same).[12]

Plaintiff presented no evidence to suggest that Defendant's proffered affirmative defense is pretextual.  *See, e.g.*, *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 800 & n.7 (6th Cir. 1998) (plaintiff presented sufficient evidence that defendant's affirmative defense of new salary cap could be pretextual by showing that it had only ever been applied to pay a *female* employee less than her predecessor).  Because Defendant has met its burden of proving that there is no genuine issue of material fact as to whether gender played a role in the alleged wage disparity, this Court GRANTS summary judgment to Defendant on Plaintiff's Equal Pay Act claim.

---

[11]   Plaintiff testified that he is now a GS 7, Step 4 or 5.  (Pl.'s Resp., Ex. 21-3 (Mahan Dep. 16: 12-13).)

[12]   This case is to be distinguished from *Beck-Wilson v. Principi*, 441 F.3d 353 (6th Cir. 2005), in which the Sixth Circuit held that the plaintiffs survived summary judgment on their claim that the VA policy of paying nurse practitioners less than physician assistants violated the Equal Pay Act.  *Id.* at 369.  The VA in *Beck-Wilson* did not meet its burden of showing that the disparity was based entirely on a factor other than sex by simply blaming the disparity on VA pay scales because the VA was not obligated to adhere to a policy that had been shown to create a pay disparity between men and women.  *Id.* at 364-69.  By contrast, there is no contention that the policy at issue in this case — the VA's formula for setting the salaries of transferees — has a disparate impact on men.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: January 23, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 23, 2009, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager